RECEIVED

JAN 26 2011

TONY R. MOORE, CLERK
BY _____
        DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| THOMAS KERSEY MILAM,<br>d/b/a MILAM CARRS,<br>    Appellant | CIVIL CASE NO: 5:10-CV-01006 |
| VERSUS | JUDGE DONALD E. WALTER |
| KIZZIE ANDERSON,<br>    Appellee | MAGISTRATE JUDGE HORNSBY |

ORIGINALLY FILED
IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| IN RE:<br>KIZZIE MARIE ANDERSON | CASE NO: 09-10620<br>CHAPTER 13 |
| KIZZIE ANDERSON, PLAINTIFF | ADVERSARY NO: 09-AP-01014 |
| VERSUS | |
| THOMAS KERSEY MILAM<br>d/b/a MILAM KARS | |

## MEMORANDUM RULING

Before the Court is an appeal filed by Thomas Kersey Milam ("Milam") d/b/a Milam Kars[1]

of an order issued by Bankruptcy Judge Stephen V. Callaway granting summary judgment to dismiss

---

[1] The Court notes that "Milam Kars", "Milam Cars", and "Milam Carrs" are used interchangeably throughout the adversary proceeding and the appeal to refer to Thomas Milam's used car business.

counterclaims asserted by Milam against Kizzie Anderson ("Anderson"). [A.P. Doc. #64; Doc. #6].[2] This Court has jurisdiction to review Milam's interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3).

## FACTUAL BACKGROUND [3]

On February 13, 2009, Anderson went to Milam's used car lot with the intention of purchasing a vehicle. Anderson arrived at Milam Kars with about $6500 in a brown paper bag, having received her tax refund the previous day. Although she had $6500, she did not want to use more than $3000 as a down payment. Anderson negotiated the sale of a 2001 Chevy Suburban (herein "SUV") with Everett Fowler, a Milam Kars salesman. She finalized the deal with Thomas Milam. The Bankruptcy Court determined that Anderson made an initial down payment of $3500, and agreed to pay $400 per week until the balance on the vehicle was paid in full. Anderson made one payment of $400 on February 20, 2009.

Prior to purchasing the SUV, Anderson had a consultation with the law firm Simon Fitzgerald Cooke Reed and Welch ("Simon Fitzgerald") to discuss the possibility of filing for bankruptcy. Anderson did not disclose to Milam that she was contemplating filing for bankruptcy, and Milam testified that he would not have sold her the vehicle if he had known she was considering bankruptcy. Anderson filed for Chapter 13 bankruptcy protection on Friday, February 27, 2009, at 12:11 p.m., two weeks after she purchased the SUV. Anderson included the SUV as property of the estate. This date coincided with the due date for the second $400 payment to Milam on the balance of the SUV.

---

[2] "A.P. Doc." refers to Bankruptcy Court Adversary Case No: 09-AP-01014. "Doc." refers to the District Court Case No: 10-01006.

[3] The Bankruptcy Court issued Findings of Fact and Conclusions of Law at the June 22, 2009, hearing regarding Anderson's Motion for Contempt, which this Court adopts. [Doc. #2-9].

2

Anderson believed that the SUV was fitted with a GPS "kill switch" that would allow Milam to disable the vehicle if she missed a payment.[4] On February 27, 2009, around 4:30 in the afternoon, Anderson arrived at Milam Kars hoping to discuss the pending $400 weekly payment and prevent Milam from disabling her vehicle. Anderson parked the SUV in the parking lot and left the keys in the vehicle with the doors unlocked. Anderson went inside the office and told Milam that she could not make the scheduled payment on the vehicle because she did not have enough money. Understandably, Milam was unhappy with this development.

At this point, Milam indicated that there was "no sale" and that Anderson needed to bring him the keys to the SUV and remove her belongings. Anderson attempted to tell Milam that she had filed bankruptcy. Anderson called a paralegal at Simon Fitzgerald and asked Milam to speak to her regarding her bankruptcy. Milam refused, and told Anderson to get out of his office if she was talking on her cell phone. Milam then went outside and took the keys from the ignition of the SUV. He then instructed his son, an employee of Milam Kars, to process the vehicle and place it back into inventory and prepare it for resale.

Shortly thereafter, Mr. Laban Levy ("Levy"), an attorney at Simon Fitzgerald, phoned Milam Kars and talked to Thomas Milam. Although Levy was not the attorney working the case, he attempted to intercede on Anderson's behalf. Levy testified that he informed Milam that a bankruptcy was filed and attempted to explain the effect of the automatic stay, but Milam hung up the phone. Milam testified that he did briefly speak to someone who identified themselves as an

---

[4] The Bankruptcy Court did not make a determination as to whether such a device was installed on the vehicle. However, the Court did find that Anderson believed her car would be disabled if she missed a payment.

3

attorney, but that bankruptcy was not discussed. The Bankruptcy Court found Levy's testimony to be more credible than Milam's on this point because it was consistent with Anderson's testimony.

Anderson became distraught after speaking with Milam. She returned to the SUV, sat inside, and refused to leave Milam Kars. At some point Anderson's belongings were removed from the SUV and placed on the pavement.[5] Milam testified that he saw Anderson strike his son who was tasked with reprocessing the vehicle. Milam called the Bossier Parish Sheriff's Department, and Deputy Orr was dispatched to the scene. Deputy Orr talked with Milam and then with Anderson, who attempted to show him the bankruptcy paperwork. Deputy Orr did not review the bankruptcy paperwork. Deputy Orr then interviewed Milam. At some point Deputy Orr apparently told Milam that Anderson had bankruptcy papers in her hand because he testified that Milam responded by saying something to the effect of "that's not the way we get notice of bankruptcies." Deputy Orr instructed Anderson to leave the dealership and she complied.

The SUV was placed back into inventory after Anderson left the dealership. Exponentially complicating matters, on Monday, March 2, 2009, just two days later, Milam sold the SUV to a third party purchaser for $8200.00.

On April 28, 2009, Anderson initiated an Adversary Proceeding against Milam alleging a violation of the automatic stay, illegal seizure, and requesting that Milam be cited for contempt for willfully violating the automatic stay. [A.P. Doc. #1]. Milam asserted a counterclaim against Anderson, alleging that she engaged in fraud, deceit, and deception that caused him to lose business

---

[5] The Bankruptcy Court did not make a determination as to whether Anderson or an employee of Milam Kars removed her belongings.

4

and incur attorney's fees. [A.P. Doc.# 21].

As part of the Adversary Proceeding, the Bankruptcy Court conducted a lengthy hearing on June 22, 2009, regarding a Turnover Order issued for the SUV and Anderson's Motion for Contempt. The Bankruptcy Court made three rulings at the conclusion of the hearing which are not before this Court on appeal: (1) the SUV was part of Anderson's bankruptcy estate, (2) Milam violated the automatic stay, and (3) the violation of the stay was willful.

The Bankruptcy Court found that the SUV and/or the right to compel perfection of the sale of the SUV was property of the estate on the afternoon of February 27, 2009, when Anderson arrived at Milam Kars. The Bankruptcy Court noted that Anderson and Everett Fowler both signed a sales document listing the remaining balance of the vehicle as $4995.00 with a $400 weekly payment beginning February 20, 2009, and continuing until paid in full. Although Milam testified that he had never participated in transactions of this nature (allowing a customer to pay weekly without financing), there was conflicting testimony by Everett Fowler that these types of transactions occurred periodically. The Bankruptcy Court found that the SUV was part of the estate because there was a deal between Milam and Anderson, and that Anderson had the right to compel Milam Kars and/or Tom Milam to give her documents sufficient to register the vehicle with the Louisiana Department of Motor Vehicles.

The Bankruptcy Court also found that the actions of Milam on the afternoon of February 27, 2009, were a violation of the automatic stay. Both Anderson and Levy attempted to inform Milam of the bankruptcy filing and provide further information, including a copy of the bankruptcy plan. The Bankruptcy Court described the situation as follows:

> No one seemed to want to hear that information [that a bankruptcy was filed] because they all understood if that information was true and correct, then that would cause a

second set of problems. So everyone did the ostrich routine and stuck their head down in the sand and pretended as if it wasn't occurring. But it was. It did occur. And there was a violation of the automatic stay that afternoon. That property [] was property of the estate and there was a violation of the [automatic] stay.

[Doc. #2-9 at 355]. The Bankruptcy Court found that Milam's violation of the automatic stay was willful because he repossessed the SUV after being told about the bankruptcy, even if he tried not to hear about it.

At the conclusion of the hearing the Bankruptcy Court recommended that Milam refund Anderson $3605.00 (the net amount he received) to eliminate the potential escalation of damages. The Bankruptcy Court did not address Milam's counterclaims at this hearing.

## ANDERSON'S MOTION FOR SUMMARY JUDGMENT

Several months after the June 22, 2009, hearing Anderson filed a Motion for Summary Judgment [A.P. Doc. #56, 57], arguing that Milam's counterclaims for fraud, damages, and attorney's fees should be dismissed. Anderson offered the June 22, 2009, transcript as support for her motion. *Id.* Milam filed an opposition to the motion and also relied solely on the June 22, 2009, transcript as support of his claims. [A.P. Doc. # 61]. On May 24, 2010, the Bankruptcy Court held a hearing on the merits. At the conclusion of the hearing Anderson's motion was granted, and Milam's counterclaims were dismissed. [A.P. Doc. #64]. Milam was granted leave to file an interlocutory appeal of the order. [A.P. Doc. #69].

Milam sets forth his counterclaims as follows:

> Mr. Milam shows that Plaintiff, Kizzy Anderson, acquired the vehicle in question by false pretenses, fraud, and deception by failing to disclose that she was going to declare bankruptcy immediately after acquiring the vehicle in order to change the terms and conditions of the transaction. Accordingly, the transaction is void or voidable pursuant to 11 U.S.C. § 523 [sic].

6

> Mr. Milam shows that Kizzy Anderson's fraud, deceit, and deception caused him to lose business and caused him to incur attorney's fees.

[A.P. Doc. #21].

The Bankruptcy Court determined that the complaint presents essentially two theories of recovery: (1) rescission of the contract due to fraud under La. C.C. art. 1953 and the recovery of attorney's fees as set forth in La. C.C. art. 1958, and (2) a general tort claim including an alleged loss of business and personal damages due to the stress of the incident.

The Bankruptcy Court began its analysis by dismissing Milam's claim for attorney's fees incurred due to Anderson's alleged fraud. Milam argues that he should be allowed to recover attorney's fees because the debt in this case would qualify as an "exception to discharge" pursuant to 11 U.S.C. § 523 because the SUV was obtained under false pretenses or fraud. [A.P. #61]. Taking this logic one step further, Milam argues that *if* the vehicle were found to be nondischargable he would have grounds to sue Anderson for rescission of the transaction due to fraud under La. C.C. art. 1953 and 1958, which specifically allow for the recovery of attorney's fees. [A.P. #61] (emphasis added).[6]

The Bankruptcy Court found that Milam cannot rely on Article 1958 to recover attorney's fees because he unilaterally and extrajudicially rescinded the sale when he repossessed the vehicle on February 27, 2009, and sold it to a third party on March 2, 2009. [A.P. Doc. #76]. The finding of the Bankruptcy Court is affirmed. The time and place for Milam to challenge the validity of the contract would have been within the context of a judicial proceeding before the Bankruptcy Court.

---

[6] Anderson's actions prior to filing for Chapter 13 protection were discussed at length during the June 22, 2009 hearing, wherein the Bankruptcy Court found that the SUV was property of the bankruptcy estate.

7

Milam cannot on one hand extrajudicially and unilaterally exercise self-help to place himself back into his original position, yet on the other hand assert that a contract with Anderson still exists and should be rescinded due to fraud. Because Milam can no longer challenge whether the original sales contract should be rescinded due to fraud he cannot be awarded attorney's fees under La. C. C. art. 1958.

The Bankruptcy Court interpreted the remainder of Milam's counterclaim as a general tort claim. Any damages caused by Anderson's alleged tortious acts would be a "willful and malicious injury" and, therefore, would be a nondischargable debt pursuant to 11 U.S.C. § 523(a)(6). The Bankruptcy Court then dismissed Milam's remaining tort claims because it determined that Milam failed to provide sufficient information to prove he suffered any damages. [A.P. Doc. # 76]. "The predicate for recovery under [La. C. C.] Article 2315 is an act that causes damage to another, which obliges the wrongdoer to repair the damage. If there has been no actual damage, there can be no recovery." *Tinsley v. Seismic Explorations, Inc.*, 117 So.2d 897, 903 (La. 1960).

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

8

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Anderson argued in her Motion for Summary Judgment that Milam's claims should be dismissed because he was not damaged. [A.P. #57]. As support, Anderson attached the transcript of the June 22, 2009, hearing regarding the violation of the automatic stay. This Court has reviewed the June 22, 2009, transcript and notes that there is no testimony regarding damages, either generally or for lost business. [A.P. #57].

Anderson provided sufficient information to show the lack of a genuine issue regarding damages, thus transferring the burden to Milam to set forth facts sufficient to create a genuine issue

9

for trial. Certainly the transcript shows that Milam was inconvenienced and understandably angry upon learning that Anderson filed for bankruptcy, but that is all it shows. Milam could have provided affidavits or other evidence to create a genuine issue regarding damages. He did not. In response, Milam merely cites to the June 22, 2009, transcript. The decision of the Bankruptcy Court to dismiss Milam's counterclaim for damages for lost business and other general damages is affirmed. There is no evidence of lost business or physical harm to Milam.

Milam argues on appeal that there is sufficient evidence in the transcript to support his claim for damages based on his mental anguish. Specifically, Milam cites Anderson's allegedly belligerent behavior towards him and because he allegedly witnessed Anderson strike his son. It is questionable whether Milam's pleading is sufficient to encompass a damage claim for mental anguish. Assuming that such claims were sufficiently plead, Milam has not set forth sufficient evidence to create a genuine issue.

Damages for mental anguish are allowed when mental distress is accompanied by physical injury, results from Plaintiff witnessing the destruction of his property, or when a defendant's conduct is so extreme that the plaintiff fears for his personal safety. *See Johnson v. First National Bank of Shreveport et al*, 792 So.2d 33 (La. App.3d Cir. 2001). The transcript of the June 22, 2009, hearing does not suggest that any of these circumstances apply. The transcript only provides evidence that Milam was angry because he felt he had been lied to and cheated by Anderson. There is no evidence of a physical injury to Milam's person or property. Although a deputy was called to the scene because Anderson would not leave the premises, Milam did not testify that he feared for his personal safety.

The evidence is also insufficient to maintain a mental anguish claim for "bystander

10

damages". Milam testified that he witnessed Anderson strike his son at some point on the afternoon of February 27, 2009. Milam's son may well have a viable tort claim against Anderson based on this allegation. However, Milam does not. "Bystander damages" for injury to a third person arise from viewing a direct *traumatic* injury to a relative, causing serious emotional distress beyond simple mental pain and anguish." *Lejeune v. Rayne Branch Hospital*, 556 So.2d 559 (La. 1990) (recovery allowed against hospital after wife discovered that her comatose husband was bitten by rats) (emphasis added). Assuming that Anderson did strike Milam's son, this is insufficient for Milam to establish a mental anguish claim as a bystander.

Accordingly, the Court finds that the Bankruptcy Court's dismissal of Milam's claims for damages due to mental anguish was proper.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that the appeal filed by Thomas Kersey Milam [Doc. #6] is **DISMISSED** and the order of the Bankruptcy Court granting Kizzie Anderson's Motion for Summary Judgment is hereby **AFFIRMED**.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25 day of January, 2011.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE